UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>KEVIN C. MCWHORTER,<br><br>        Defendant. | Case No. 09-cr-30046-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Kevin C. McWhorter's motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 39). In response, the Government has moved to dismiss the motion for failure to exhaust administrative remedies (Doc. 43). McWhorter has responded to that motion (Doc. 45), and the Government has replied to that response (Doc. 46).

**I.    Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *see United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

> of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
> 
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A). The failure to exhaust is an affirmative defense that must be asserted by the Government or will be waived. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).

The exhaustion of remedies portion of this statute provides that the defendant may file a motion for compassionate release after the earlier of two events: (1) "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." As a practical matter, (2) will almost always provide the relevant exhaustion mark because it is virtually impossible to exhaust the BOP's comprehensive administrative remedy process within 30 days. Thus, the Court asks whether the defendant waited 30 days after the warden received his request before filing this motion.

The 30-day period is a mandatory claim-processing rule that must be enforced by the Court if the Government raises it. *Sanford*, 986 F.3d at 782 (noting that "may not modify a term of imprisonment" is language of a mandatory claim-processing rule that must be enforced). Thus, where an inmate has not satisfied either option for exhausting his administrative remedies for compassionate release *before* filing his motion, the Court must deny the defendant's motion without prejudice to another motion filed *after* exhaustion. *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

Additionally, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).  Otherwise the warden is not equipped to properly consider the defendant's request.

## II.     Analysis

The Government asks the Court to dismiss the petitioner's motion for compassionate release because his request to the warden for the BOP to move for compassionate release on his behalf was deficient.  Specifically, the Government argues that a proper request must comply with 28 C.F.R. § 571.61(a), which states in pertinent part:

> A request for a motion under 18 U.S.C. . . . 3582(c)(1)(A) shall be submitted to the Warden.  Ordinarily, the request shall be in writing, and submitted by the inmate.  An inmate may initiate a request for consideration under 18 U.S.C. . . 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  The inmate's request shall at a minimum contain the following information:
> (1)   The extraordinary or compelling circumstances that the inmate believes warrant consideration.
> (2)   Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a).  The Government argues that the exhaustion requirement is designed to allow the BOP to move for compassionate release on behalf of a defendant, but it cannot make an informed decision whether to bring such a motion—and indeed cannot file such a motion—without knowing the extraordinary and compelling circumstances.  *See Williams*, 987 F.3d at 703.  The Government argues the same is true for the need to know a defendant's release plan under § 571.61(a)(2).  The Government contends McWhorter's request was deficient because he sent it to his case manager rather than the warden, he did not mention COVID-19, and he did not

3

explain the details of his release plan.

McWhorter argues that he asked the warden to file a motion for compassionate release in May 2020, and the warden indicated orally he would not file a compassionate releases motion on behalf of anyone and would not respond to any request that he do so. The defendant notes that there is no BOP form for asking the warden to file a motion, so he did the best he could by emailing his case manager during the initial COVID-19 pandemic chaos. Indeed, the pandemic caused McWhorter's institution, the Federal Correctional Institute at Greenville, Illinois ("FCI-Greenville") to be locked down until at least June 30, 2020.

In other exhaustion contexts, the Court has consistently held that an inmate must exhaust his administrative remedies in the manner specified by agency rules, and a failure to do so does not count as exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006) (42 U.S.C. § 1997e(a) context); *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (same). When determining whether an inmate has complied with agency exhaustion requirements, the Court must keep in mind the purposes of those requirements: giving prison officials an opportunity to take corrective action before a court gets involved, filtering out frivolous claims, and creating an administrative record to illuminate the dispute for a court. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The purposes decidedly do not include putting up meaningless barriers to inmates' pursuing resolution of their claims. If a grievance serves its intended purposes, the Court may consider it adequate even if it does not dot every "i" or cross every "t". *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

The Government has not carried its burden of showing McWhorter failed to exhaust available administrative remedies because his administrative request did not strictly comply with 28 C.F.R. § 571.61(a).

First, the Government complains that McWhorter's email request was directed to a case manager, not the warden, as required by § 571.61(a). McWhorter claims, however, that he asked the warden about compassionate release before the email. The Government has not established McWhorter did not submit a request to the warden that satisfied § 571.61(a). It has further not established an earlier oral request—clearly contemplated by § 571.61(a)'s notation that "ordinarily" a grievance must be in writing—failed to meet the requirements. Finally, not having obtained any answer from the warden, McWhorter contacted a case manager to plead his claim, his best effort to actually reach a non-responsive warden.[1] No BOP rule prohibits an inmate from making these efforts.

Second, the Government complains that McWhorter did not specifically mention COVID-19 in his email to the case manager, instead only mentioning his breathing ailments. It strains credulity to claim that in the second month after a world-wide pandemic hit the United States in force—a pandemic that was manifesting itself in hundreds of thousands of people worldwide facing fatal respiratory problems—that the BOP did not know McWhorter's request was about COVID-19. To any reasonable BOP employee, it would have been clear that McWhorter wanted compassionate release because his breathing ailments created a special susceptibility to the dangers of COVID-19. The grievance accomplished its purpose of notifying the BOP of the problem and inviting corrective action. The Government's reliance on this

---

[1] The Court does not mean to suggest that the warden was delinquent for failing to respond to individual requests for compassionate relief. In the first months of the pandemic, BOP wardens had their hands full trying to stem the spread of COVID-19 in their facilities, deciding who to release to home confinement pursuant to the U.S. Attorney General's direction, and other urgent pandemic-related matters. The wardens were focused on addressing the safety of inmates at a more systemic level as opposed to responding to individual grievances, a decidedly less efficient way to address the problem initially. Inmates were still able to approach a court 30 days after a request to the warden, so a warden's failure to prioritize individual requests did not deprive inmates of a remedy.

argument now simply ignores the contextual realities of McWhorter's email that all but the most obtuse recipient would have appreciated as related to COVID-19.

Third, the Government complains that McWhorter failed to describe his release plan in his request as required by § 571.61(a)(2). Again, this ignores the reality of the pandemic and the institutional lockdown at FCI-Greenville at the time McWhorter requested compassionate release. McWhorter's release plan was already on file with his unit manager, *see* Def.'s M. 3 (Doc. 39), so officials at FCI-Greenville had access to it. In fact, their access was likely greater than McWhorter's during the lockdown, when non-essential interactions such as responding to inmate requests for documents were severely curtailed.[2] Inmates are not required to comply with administrative requirements that are not available to them, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (42 U.S.C. § 1997e(a) context), such as, for example when prison officials fail to give an inmate a required form, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). That rule also applies where information required to be included in an administrative request is beyond the reach of the inmate for whatever reason. Here, the Government has not shown that McWhorter had access to his release plan at the time he requested compassionate release such that he could have included it with that request.

### III.   Conclusion

Because the Government has failed to carry its burden of showing the defendant failed to make a proper request to the warden for compassionate release before approaching the Court, the Court **DENIES** the Government's motion to dismiss (Doc. 43). The Court further **ORDERS** that the defendant shall have 21 days from entry of this order to file an amended counsel-drafted

---

[2] Indeed, McWhorter claims in his motion that he has been unable to obtain copies of his medical records. Def.'s M. ¶ 4 (Doc. 39).

motion for compassionate release, the Government shall have 14 days to respond, and the defendant shall have 7 days to reply.  In their briefs, the parties shall alert the Court, if possible, of the defendant's COVID-19 vaccination status.

**IT IS SO ORDERED.**
**DATED:  May 14, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
