UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 09-cr-30046-JPG |
| KEVIN C. MCWHORTER, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Kevin C. McWhorter's amended motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 53). The Government has responded (Doc. 55).

**I.    Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the

community.  U.S.S.G. § 1B1.13(2).[1]  The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

> **(A)** **Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> * * *
>
> **(C)** **Family Circumstances.**
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D)** **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

3

for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

## II.     Analysis

In August 2009, McWhorter pled guilty to one count of conspiracy to manufacture and distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). At the defendant's sentencing in November 2009, the Court found his relevant conduct to be 2.5 kilograms of a mixture and substance containing methamphetamine. His total offense level was 35 and his criminal history was category V, where his guideline sentencing range was 262 to 327 months. The Court sentenced McWhorter to serve 240 months in prison, the statutory minimum sentence. McWhorter did not appeal his sentence.

Now, McWhorter asks the Court for immediate compassionate release because of the surge in COVID-19 cases at FCI-Greenville, where he is housed, and his risk factors for serious consequences from the disease—including COPD, asthma, emphysema, and hyperlipidemia. He contracted COVID-19, recovered, and has since been vaccinated. He notes that the BOP categorizes him as a minimum security designation and low recidivism risk, and he has an excellent prison record, including getting his GED, working in UNICOR, and only three disciplinary matters early in his incarceration. Had he been sentenced today, his statutory

4

mandatory minimum would have been 15 years rather than 20, and he would have served the vast majority of a 15-year sentence. He is set to be released in October 2026, although that date may be moved up in light of sentence credit McWhorter expects to receive. He plans to live with and help care for his elderly mother, who suffers from breathing and heart problems and needs assistance with activities of daily living and transportation. McWhorter also plans to help care for his two youngest children who have been removed from their mother's care and placed with a relative who will struggle to care for them. He has a job waiting for him when he is released.

In response, the Government argues McWhorter failed to exhaust his administrative remedies to the extent his request is based on anything other than COVID-19 and his medical conditions. It also contends that McWhorter's medical conditions, even in combination with the COVID-19 pandemic, do not amount to extraordinary and compelling circumstances justifying relief in light of the fact that McWhorter was fully vaccinated in March 2020 and the BOP is treating his conditions. Nor do his family circumstances, which are faced by many inmates with ailing parents and children in the state's care, justify release, especially in light of the fact that he has siblings to help care for his aging mother and another relative to care for his children. Finally, it argues he still remains too much of a danger to society in light of the serious nature of his offense that involved guns and the use of a minor, and his prison disciplinary history involving weapons and assault.

The defendant has exhausted his administrative remedies to the extent his current request is based on his health conditions and the risk from COVID-19. However, to the extent his request is based on his family circumstances, he did not raise those issues in his request to the warden, so he has not exhausted his administrative remedies as to those factors. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

As for the defendant's physical condition, the Court does not dispute that he suffers from serious health conditions that make him especially susceptible to the dangers of COVID-19. However, he has been fully vaccinated and has not shown he is unable to benefit from that vaccination. "A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, No. 20-2906, 2021 WL 3076863, *2 (7th Cir. July 21, 2021). For McWhorter, the danger from COVID-19 can no longer present an extraordinary and compelling reason for release.

As for the COVID-19 pandemic generally, the Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Furthermore, the BOP has already administered more than 210,000 doses of a COVID-19 vaccine in total and has vaccinated approximately 855 of the approximately 1,200 inmates at FCI-Greenville, where McWhorter is currently incarcerated. *See* BOP, COVID-19 vaccine implementation, https://www.bop.gov/ coronavirus/ (visited Aug. 13, 2021), which will greatly reduce the threat to inmates from the disease.

Even if there were extraordinary and compelling reasons for compassionate release, McWhorter is still a danger to the safety of others in the community. The Court's analysis of the § 3553(a) factors at the sentencing hearing continue to apply now. He was in criminal history category V with a history of disregard for rules. Furthermore, although McWhorter's conduct in prison is admirable in some regards—his education and employment—his disciplinary violations

involving weapons and an assault show his full sentence (reduced by any credits to which he is entitled) is still necessary to protect the public from his further crimes.  Anything less would undermine the gravity of his offense and would not promote respect for the law.

### III.     Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for immediate compassionate release (Doc. 53).  In light of this order, the Court **DENIES as moot** McWhorter's *pro se* motion for compassionate release (Doc. 39).

**IT IS SO ORDERED.**
**DATED:  August 16, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
